IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | Civil Action No.  MDL 875 |
| RENO v. A C and S, INC.,  et al | PA-ED No.  09-CV-60293<br>*Trans from WD-WI Case No. 01-cv-0189* |

**PLAINTIFF'S BRIEF IN OPPOSITION TO OWENS-ILLINOIS MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS**

Plaintiff submits this brief in opposition to Defendant Owens-Illinois's ("O-I") motion for summary judgment based on the three year Wisconsin statute of limitations for filing personal injury claims.  O-I does not move for summary judgment on any other grounds.[1]

**Facts**

Charles Reno ("Reno") was found to have pleural thickening in his lungs on October 15, 1984.  (Ex 1 at 4.)  On March 19, 1993, a pulmonary function test ("PFT")  found Reno had "normal baseline flows and volumes" and that "the diffusing capacity was normal."  (Ex 2 at 2.) Although medical records dated March 19, 1993 state that "multiple chest x-ray[s] obtained over the past 10 years were reviewed and all films demonstrate bilateral pleural scarring compatible with the patient's remote history of asbestos exposure," the medical records also state that "There appears to be no progressive pleural disease." (Ex 2 at 3.)  Reno was not found to have an asbestos-related pleural disease  until February 2, 2001, when Dr. Alvin Schonfeld prepared a

---

[1] O-I does not contend in its motion for summary judgment that the evidence concerning Charles Reno's exposure to O-I products is insufficient.  Plaintiff does not oppose the portion of O-I's motion for summary judgment relating to the civil conspiracy claim against O-I only.

1

report. (Ex 3.) It was not until March 15, 2001 that Reno was found to have restrictive breathing. (Ex 4.)

Reno filed his complaint on March 26, 2001. (Pl.'s Compl. ¶ 9, ECF No. 112-1.) It was not until 2005 that Reno was diagnosed with asbestosis for the first time. (Ex 6.)

### Argument

I.   *Reno filed his Complaint within the Statute of Limitations Period.*

Wisconsin substantive law is applicable because this case was filed in the United States District Court for the Eastern District of Wisconsin based on diversity jurisdiction. *See, e.g., Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001).

Wisconsin has a three-year statute of limitations for personal injury actions. Wis. Stat. § 893.54(1). The Wisconsin Supreme Court has adopted the "discovery rule," holding that "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen v. A.H. Robins Co.*, 113 Wis.2d 550, 560, 335 N.W.2d 578 (1983). The Wisconsin Supreme Court has also held that "the limitations period did not begin to run until [the plaintiff] knew the nature of her illness... as diagnosed by [a medical professional]. Only when a diagnosis was made could [the plaintiff's] condition be related to a cause." *Borello v. U.S. Oil Co.*, 130 Wis.2d 397, 409, 388 N.W.2d 140 (1986). In other words, "[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Arthur Raymond v. Eli Lilly and Co.*, 117 N.H. 164, 171, 371 A.2d 170 (1977), cited with approval by the Wisconsin Supreme Court in *Borello*, 130 Wis.2d at 409.

Although Reno was found to have pleural thickening on October 15, 1987, it was not until February 2, 2001 that he was found to have an asbestos-related pleural disease. Further, it was not until March 15, 2001 that Reno was found to have restrictive breathing. Between October 15, 1987 and March 15, 2001, Reno periodically visited medical professionals. There is no evidence that Reno was diagnosed with an asbestos-related disease or found to have a restrictive breathing impairment until 2001.[2] Accordingly, under Wisconsin's discovery rule, the statute of limitations did not begin to run until February 2, 2001. Reno filed his complaint on March 26, 2001, long before the statute of limitations expired.

OI's assertion that the statute of limitations began to run on October 15, 1987 (the date Reno was first found to have pleural thickening) lacks merit. On November 14, 2011, this court ruled that "pleural plaques and pleural thickening are not cognizable injuries." (Ex 7 at p.21.) Accordingly, even assuming, for the sake of argument, that Reno knew or should have known that his pleural thickening was caused by exposure to asbestos in 1987, this Court has ruled that pleural thickening, by itself, is not actionable. Reno was not found to have restrictive breathing until 2001 (the year he filed his complaint) and was not diagnosed with an asbestos-related disease until 2005. Accordingly, the statute of limitations did not begin to run until March 15, 2001, when Reno was first diagnosed with restricted breathing. OI cites no evidence that Reno discovered or should have discovered he had an actionable claim before then.

Reno properly relied upon the findings of his medical treaters that he did not have an asbestos related disease until 2001. The Wisconsin Supreme Court has held that "We cannot

---

[2] OI was given a copy of Reno's pertinent medical records on February 22, 2012. OI had the opportunity to obtain further records under the protocol for obtaining medical records in CVLO MDL 875 cases.

expect the ordinary person to take extraordinary steps to secure a full medical analysis." *Borello*, 130 Wis.2d at 414. In light of the evidence described above, the investigation conducted by Reno's doctors was sufficient to satisfy the requirements of the discovery rule. Accordingly, pursuant to this court's November 14, 2011 order, Reno did not have a cognizable cause of action for asbestos-related disease until February 2, 2001, and the statute of limitations did not begin to run until that date.

At a bare minimum, a genuine issue of material fact exists as to whether Reno knew or should have known of any actionable injury due to asbestos exposure more than three years before the lawsuit was filed on March 26, 2001. Accordingly, OI's motion for summary judgment must be denied.

II.   *Punitive Damages is not properly before this court on summary judgment.*

O-I has also moved for summary judgment on plaintiff's punitive damages claim. This portion of O-I's motion is not properly before this court. Since the inception of MDL 875, actions transferred to the MDL have, for good cause, had their claims for punitive damages severed and retained in MDL 875. *See, e.g., In re Collins*, 223 F.3d 809, 810 (3rd Cir. 2000).

Further, on January 29, 2013, liaison counsel for plaintiffs' and defendants' land based MDL 875 steering committees filed a joint motion to appoint a special master to make (*inter alia*) recommendations and reports to this Court regarding the administrative handling of legal and factual issues pertaining to the ultimate disposition of punitive damages claims severed and retained in MDL 875. (Document 8806, attached hereto as Exhibit 5) This joint motion has yet to be ruled upon by the Court.

In light of the above, it is premature for O-I to move for summary judgment on the issue of punitive damages.  Rather, the punitive damages claim should be severed and retained by the MDL for later adjudication, as has been the case in other MDL 875 cases.

## Conclusion

For each of the reasons stated above, plaintiff respectfully requests that defendant Owens-Illinois's motion for summary judgment be denied.

Dated March 4, 2013

*/s/   Robert G. McCoy*

Attorney for plaintiff

Robert G. McCoy
Jin-Ho Chung
Cascino Vaughan Law Offices, Ltd.
220 South Ashland Ave.
Chicago, IL 60607
(312) 944-0600
(312) 944-1870 (fax)